**Clifton A. GABAREE, Jr., Appellant,**

**v.**

**STATE of Missouri, Respondent.**

**No. WD 69551.**

Missouri Court of Appeals,
Western District.

Aug. 11, 2009.

Laura G. Martin, Kansas City, MO, for Appellant.

Shaun J. Mackelprang, Jefferson City, MO, for Respondent.

Before: THOMAS H. NEWTON, C.J., JAMES M. SMART, JR., and MARK D. PFEIFFER, JJ.

THOMAS H. NEWTON, Chief Judge.

Mr. Clifton Gabaree appeals the denial of his post-conviction relief motion without an evidentiary hearing. He claims that trial counsel was ineffective for failing to object to improper bolstering and to propensity evidence and for failing to impeach one of the victims. We reverse and remand for an evidentiary hearing.

**Factual and Procedural Background**

In 1992, Mr. Gabaree began living with K.S. who had two daughters, B.S. and A.S. Mr. Gabaree and K.S. later had two children together, a daughter M.G. and a son B.G. In 1996, DFS received statements from five-year old B.S., four-year old A.S., and two-year old M.G. that Mr. Gabaree was physically abusing them and sixteen-month old B.G. The children had marks, burns, and bruises consistent with the physical abuse they described; they were dirty and covered with untreated scratches and scrapes. Dr. James Kelly examined all of them and determined that the bruises and marks on B.S., A.S., and M.G. were consistent with intentional infliction. The DFS worker interviewed the live-in paternal grandmother who informed the DFS worker that she witnessed her son Mr. Gabaree physically abuse the children. After K.S. declined family preservation services, the children were placed in foster care. Mr. Gabaree submitted to a psychological evaluation performed by Dr. Gregory Sisk at DFS's request. B.S. and A.S. were returned to K.S. after she and Mr. Gabaree ended their relationship.

In December 1996, six-year old B.S. told a DFS worker that Mr. Gabaree put his "thingy" and finger inside of her bottom "a long time ago," when she was three years old. She also stated that she observed Mr. Gabaree doing something to A.S. The DFS worker then interviewed five-year old A.S., who stated that neither Mr. Gabaree nor anyone else had given her or her sister a bad touch. She also stated that she no longer loved Mr. Gabaree. B.S. later told her mother K.S. that Mr. Gabaree would stick his "thingy" in her "butt" more than once and "had the 's' word with her" using lotion or cream while K.S. was at work. A.S. told her mother that Mr. Gabaree played with her privates with Q–Tips when she and the other children were playing hide-and-go-seek with him.

The girls provided statements during videotaped interviews at the Child Protection Center (CPC). B.S. retold the interviewer what she previously had told the DFS worker and K.S. including the statement that Mr. Gabaree put his "private" in A.S.'s "back private." Additionally, she stated that Mr. Gabaree put his finger in her front private and made her "suck his private." A.S. told the interviewer that Mr. Gabaree touched her "butt" and "pee pee" with a belt and his hand. Subsequently in February 1997, Dr. Barbara Allphin performed Sexual Abuse Forensic Examination (SAFE) exams on each child for physical evidence of sexual abuse, but none was found.

Mr. Gabaree was arrested. During interrogation, he denied physically or sexually abusing the children. He stated that the children probably were confused because when they were younger he would bathe with them and probably had an erection. He wrote an apology letter to the girls providing them with this explanation. Mr. Gabaree was charged with three counts of first-degree statutory sodomy, three counts of first-degree child molestation, and six counts of abuse of a child.

A jury trial occurred in 1998. As to the sexual abuse allegation, B.S. testified that Mr. Gabaree did sex with his "thingy" in her bottom and A.S.'s bottom. She observed him touching A.S.'s bottom with his "thingy" through a glass door. She specif-

ically denied that he touched any other parts of her body, that he had her touch any other parts of his body, or that he asked her to do anything with her mouth. She testified that she was telling the truth when she spoke to the DFS caseworker and admitted that she probably remembered more at that time than she did at the time of her testimony. A.S. testified that Mr. Gabaree gave her a "bad touch" because he "did sex" to her but did not explain the latter phrase when asked, and that he touched her "privates" with his hand. After being shown a diagram, she testified that Mr. Gabaree touched her "vagina" with his penis. She also denied any bad touch occurring in the bathtub and stated that Mr. Gabaree used Q–Tips to touch her bottom.

Mr. Gabaree claimed that the children were making false allegations because K.S. was bitter about their break-up. Mr. Gabaree testified that he did not molest the children but he, K.S., and the children bathed together because it was K.S.'s idea of family bonding. He also stated that he bathed the girls without K.S. present and would have them sit on his upper and lower leg to clean them, as if K.S. were still in the bath tub. He also testified that he did not abuse the children but spanked them with a belt to discipline them for misbehavior that endangered them or their siblings' lives.

He also presented testimony from his family and Ms. Tonya Young, a former girlfriend. Two of his sisters testified that they did not witness Mr. Gabaree abuse the children. One of the sisters testified that she did not notice bruises. The other sister testified that she noticed bruises when the children, Mr. Gabaree, and K.S. lived with her and her mother, but she did not consider them signs of abuse. She also testified that she observed her brother bathing the children in the tub by themselves and believed it would not be normal for her brother to be naked in the tub with them. Mr. Gabaree's mother testified that she did not observe any abuse and denied telling a DFS worker that her son had physically abused the children.

Ms. Young testified that she did not notice any abuse when K.S. and the two girls lived with her in December 1996, which was after her relationship had ended with Mr. Gabaree. Defense counsel attempted to solicit statements from Ms. Young that the girls recanted the sexual abuse allegations to her in February 1997. But the prosecutor objected, claiming it was improper impeachment because defense counsel had not confronted the girls with their statements to Ms. Young. The trial court sustained the objection, and Ms. Young testified about the girls' recantations during an offer of proof.

At the end of the first trial, the jury convicted Mr. Gabaree of all twelve counts. He appealed, and we affirmed. *State v. Gabaree*, 39 S.W.3d 112 (Mo.App. W.D. 1999). He then filed a motion to vacate, set aside or correct the judgment or sentence. The motion court granted relief because Mr. Gabaree proved that trial counsel's failure to lay the foundation for impeachment of the girls' statements was deficient. It found that Mr. Gabaree was prejudiced because there was a reasonable probability that the girls' recantations would have influenced the jury to reach a different result.

In 2003, Mr. Gabaree had another jury trial. All the State's witnesses from the first trial, except for Dr. Allphin, testified at the second trial. Dr. Allphin could not attend, so Dr. Kelly testified about the SAFE exam based on her report. As to the sexual allegations, B.S. testified that when she was between three and seven years old, Mr. Gabaree had sex with her by putting his penis in her butt and vagina,

which "felt like being in hell." He also touched her anus and her vagina with his hand and forced her to "suck his penis." B.S. also testified that she saw Mr. Gabaree have sex with A.S. A.S. testified that she remembered that Mr. Gabaree touched her "private part" with his hands and stated that her old drawing of his private part and her private part depicted what he would use on her sometime.

Again, Mr. Gabaree testified in his defense that he did not physically abuse or sexually abuse the children. He admitted to disciplining the children and to bathing with the girls and washing them with his bare hands. A different sister testified that she did not observe any abuse or bruises on the children. Ms. Young's testimony provided during the offer of proof concerning the girls' alleged recantations from the first trial was read into evidence.

After hearing the evidence, the jury found Mr. Gabaree guilty of three counts of first-degree statutory sodomy, three counts of first-degree child molestation, and six counts of abuse of a child. Mr. Gabaree was sentenced to respective sentences of life imprisonment, seven years, seven years, and five years, to all run concurrently. Mr. Gabaree appealed, and we affirmed. *State v. Gabaree*, 164 S.W.3d 32 (Mo.App. W.D.2005). Mr. Gabaree filed a *pro se* motion for post-conviction relief. He subsequently filed an amended motion, which the motion court denied without an evidentiary hearing. Mr. Gabaree appeals.

### Standard of Review

 We review the denial of a post-conviction motion to determine whether the motion court's findings of fact and conclusions of law are clearly erroneous. *Moss v. State*, 10 S.W.3d 508, 511 (Mo. banc 2000). "Findings and conclusions are clearly erroneous if, after a review of the entire record, the court is left with the definite and firm impression that a mistake has been made." *Id.*

### Legal Analysis

Mr. Gabaree argues that the trial court erred in denying his motion without an evidentiary hearing because he alleged facts and not conclusions that trial counsel provided ineffective assistance when she: (1) failed to object to Dr. Kelly's testimony that he found B.S. and A.S.'s allegations of sexual abuse to be "a very credible disclosure"; (2) failed to object to Dr. Sisk's testimony about Mr. Gabaree's propensity to physically and sexually abuse children; and (3) failed to impeach B.S. with her prior trial and deposition testimonies.

 Rule 29.15(h) states that an evidentiary hearing shall not be held if "the motion and the files and records of the case conclusively show that the movant is entitled to no relief." An evidentiary hearing is required only if: (1) the motion alleged facts, not conclusions, which would warrant relief; (2) the facts alleged raise matters not refuted by the file and records in the case; and (3) the matters complained of resulted in prejudice. *Morrow v. State*, 21 S.W.3d 819, 822–23 (Mo. banc 2000). To be entitled to an evidentiary hearing based on claims of ineffective assistance of counsel, Mr. Gabaree had to allege facts, which the record did not refute, (1) that counsel failed to demonstrate the customary skill and diligence of a reasonably competent attorney and (2) that counsel's deficient performance prejudiced him. *Id.* at 823. A movant establishes prejudice by showing a reasonable probability exists that the trial outcome would have been different but for trial counsel's deficient performance. *Id.* The motion court's decision to deny an evidentiary hearing will be affirmed if the record conclusively shows that Mr. Gabaree is not

entitled to relief. *See Wilkes v. State*, 82 S.W.3d 925, 928 (Mo. banc 2002).

In his motion, Mr. Gabaree alleged that Dr. Kelly's comment that the girls' disclosures from the CPC interviews were "very credible" was improper bolstering of their testimony. He further alleged that he was prejudiced because the prosecutor used Dr. Kelly's comment of credibility in its closing argument to argue that the girls were telling the truth. As Mr. Gabaree correctly states, expert witnesses are not allowed to give their opinion as to the veracity of another witness's statement because it invades the jury's province. *State v. Churchill*, 98 S.W.3d 536, 538–39 (Mo. banc 2003). An expert may comment as to the "behaviors and other characteristics commonly found in those who have been the victims of sexual abuse," but may not comment directly on "a specific victim's credibility as to whether they have been abused." *Id.* at 539. Such testimony has been dichotomized into general testimony and particularized testimony. *Id.* In Missouri, the former is admissible, while the latter is impermissible. *Id.*

Dr. Kelly testified that Dr. Allphin did not find physical evidence of the sexual abuse and explained how that finding was common in situations similar to the girls', in which time had lapsed between the sexual abuse and the physical exam. He further stated that Dr. Allphin reviewed the girls' disclosures from CPC records instead of conducting her own interviews. The prosecutor asked: "Based on the history that these girls provided to Dr. Allphin and the exam that she did, the Safe exam form that you are familiar with, would you say their exams were consistent with sexual abuse?" Dr. Kelly replied: "It's based primarily on disclosure, given the interview process and they had very, very specific disclosure, description, a very consistent disclosure. And I found it a very credible disclosure from both of them." Trial counsel did not object to the testimony.

The record does not refute Mr. Gabaree's allegations that Dr. Kelly's latter statement was particularized and improperly bolstered the girls' CPC interviews. Nor does the record conclusively show that reasonable trial strategy was the reason for trial counsel's failure to object to this testimony. Thus, an evidentiary hearing on this claim is warranted because Mr. Gabaree alleged sufficient facts (1) that trial counsel fell below the reasonably competent attorney standard and (2) that trial counsel's deficient performance prejudiced him, which were not refuted by the record. *See Wilkes*, 82 S.W.3d at 930 (finding evidentiary hearing was warranted on ineffectiveness claim for counsel's failure to present eyewitness testimony that supported movant's defense).

Mr. Gabaree is also entitled to an evidentiary hearing on his second claim. In his motion, Mr. Gabaree alleged that Dr. Sisk's testimony amounted to improper propensity evidence because Dr. Sisk testified that Mr. Gabaree has thought processes that are consistent with someone who sexually abuses or physically abuses children. Mr. Gabaree further alleged that he was prejudiced because the jury considered that evidence in determining his guilt. "[S]howing the defendant's propensity to commit a given crime is not a proper purpose for admitting evidence, because such evidence may encourage the jury to convict the defendant because of his propensity to commit such crimes without regard to whether he is actually guilty of the crime charged." *State v. Nelson*, 178 S.W.3d 638, 642 (Mo.App. E.D.2005) (citation and internal quotation marks omitted).

Dr. Sisk testified that he conducted a psychological test on Mr. Gabaree to determine whether he held beliefs that would

underlie abuse or neglect. The test results indicated to him that Mr. Gabaree "holds beliefs that have a potential there to lead to physical abuse or neglective care." He further explained that one of Mr. Gabaree's scores "suggested . . . that he used the children to meet his needs, to give him comfort or love, reassurance, that sort of thing." The prosecutor then asked "would that include sexual needs," to which Dr. Sisk replied, "It could, yes." Dr. Sisk also testified to the following during cross-examination: "[A] person, you know, had children and came out with these scores, yes, they're probably abusing or neglecting the children if they are acting on those beliefs." He further testified, "If you're a parent and those are the beliefs that you hold, I guess, there's the assumption made that you're operating as a parent under those beliefs and you're actually doing it." Trial counsel did not object to any of these statements.

Because Dr. Sisk's testimony about Mr. Gabaree's beliefs constituted propensity evidence, it was not admissible. Again, the record does not reflect the reasonable basis for trial counsel's failure to object to this testimony. Thus, an evidentiary hearing on this claim is warranted because Mr. Gabaree alleged sufficient facts (1) that trial counsel fell below the reasonably competent attorney standard and (2) that trial counsel's deficient performance prejudiced him, which were not refuted by the record. *See Wilkes,* 82 S.W.3d at 930.

 Finally, Mr. Gabaree is also entitled to an evidentiary hearing on his third claim. In his motion, Mr. Gabaree alleged that B.S.'s trial testimony that Mr. Gabaree committed specific acts to her should have been impeached with her testimony from the first trial and deposition testimony that Mr. Gabaree had not committed those same specific acts on her. Mr. Gabaree further alleged that he was prejudiced because credibility was the main issue in determining his guilt, especially for the sodomy charges, and as a result, the evidence "would have gone to a central, controverted issue on which the jury focused during deliberations—[B.S.]'s accuracy, veracity, and credibility." Trial counsel's failure to impeach a witness will not constitute ineffective assistance of counsel unless this action would have provided the defendant with a viable defense or changed the outcome of the trial. *State v. Ferguson,* 20 S.W.3d 485, 506–07 (Mo. banc 2000).

The two allegations B.S. denied during the deposition and the first trial—that Mr. Gabaree put his finger in her vagina and that Mr. Gabaree made her "suck his penis"—go to the center of the State's case to prove Mr. Gabaree's guilt of child molestation in at least two counts. Because B.S.'s testimony during the first trial and deposition can be used not only to impeach her credibility, but also to argue truth of the matter as substantive evidence, the prior inconsistent statements could have provided Mr. Gabaree with a viable defense. *See* RSMo 2000 § 491.074 (providing a witness's prior inconsistent statements can be used both to impeach contrary testimony by the declarant at trial and as substantive evidence of its truth, regardless of which party called the witness). Accordingly, Mr. Gabaree is also entitled to an evidentiary hearing on this claim. *See Wilkes,* 82 S.W.3d at 930.

### Conclusion

The motion court erred in denying Mr. Gabaree relief on his claims without an evidentiary hearing. We reverse and remand to the motion court for an evidentiary hearing on Mr. Gabaree's claims.

SMART and PFEIFFER, JJ. concur.