# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-2399

_____

Guillermo Escobedo

*Petitioner - Appellee*

v.

Mark Lund

*Respondent - Appellant*

_____

Appeal from United States District Court
for the Northern District of Iowa - Sioux City

_____

Submitted: April 16, 2014
Filed: July 28, 2014

_____

Before LOKEN and MURPHY, Circuit Judges, and LIMBAUGH,[1] District Judge.

_____

LIMBAUGH, District Judge.

Guillermo Escobedo was convicted by a jury in Iowa of first-degree murder, willful injury, and assault causing bodily injury. He was sentenced to life in prison for the first-degree murder. The Iowa Court of Appeals affirmed the conviction and

_____

[1]The Honorable Stephen N. Limbaugh, Jr., United States District Judge for the Eastern District of Missouri, sitting by designation.

sentence on direct appeal, State v. Escobedo, 573 N.W.2d 271 (Iowa Ct. App. 1997), and subsequently affirmed the denial of his motion for post-conviction relief, Escobedo v. State, 2004 WL 2804848 (Iowa Ct. App. 2004). Escobedo petitioned for a writ of habeas corpus in the district court under 28 U.S.C. § 2254 based on a claim of ineffective assistance of counsel. The district court granted relief on the ground that counsel should have requested a mistrial after the trial court improperly substituted an alternate juror for a juror who had been dismissed for misconduct after deliberations had begun. The state appeals, arguing that Escobedo established neither constitutionally deficient performance nor prejudice under Strickland v. Washington, 466 U.S. 668 (1984). After careful review of the record, we reverse the grant of habeas relief.

## I. Factual and Procedural Background

On January 14, 1995, Escobedo and co-defendant Cesar Herrarte hosted a party at their residence that was attended by a number of young people. Two young men, Justin Younie and Kevin Kaskie, along with some of their friends, were invited to the party by another man who resided with Escobedo and Herrarte. When they arrived at the party, several young women, as well as Escobedo and Herrarte were present. Wrestling matches and drinking contests ensued.

Later in the evening a confrontation occurred between Kaskie and another party guest, and the two were arguing and shoving each other. Younie placed himself between other guests and the two involved in the confrontation to prevent escalation or interference. One witness testified that Younie appeared "[t]o be stopping it from becoming a fight, having them two jump in and start a big fight there." During the shoving match, Escobedo and Herrarte went into the kitchen and armed themselves with meat-packing knives, then charged the party guests and stabbed Younie in the back and abdomen.

The guests fled the house with Escobedo and Herrarte in pursuit. A few of Younie's friends managed to make it into Younie's vehicle, but Younie himself was unable to climb inside. Escobedo and Herrarte soon reached Younie's vehicle. Escobedo pounded on the window of the vehicle shattering it and began slashing the interior with the knife. One of Younie's friends started the engine and pulled away from the attack, and they attempted to pull Younie into the vehicle but were unsuccessful. Kaskie, who also had been stabbed during the melee, made his way to another car, and was driven to the hospital.

Younie died a short time after the brutal attack. His wounds were so deep and severe that numerous vital organs and arteries in the chest and stomach area were cut or severed and some of his abdominal contents were expelled from his body. After the murder, Escobedo told a police officer he attacked the victims with a knife "[b]ecause they provoked me. They got us fed up. They said 'F--- you,' and that's when I went and got the knife."

A.     **The Trial**

The events surrounding the end of Escobedo's and Herrarte's trial form the basis of Escobedo's petition. Escobedo was represented by attorney Steven Pals and Herrarte was represented by Gregory Jones, Chief Public Defender for Woodbury County. Pals and Jones made several objections during and after the prosecutor's closing argument. They objected to the prosecutor's use of "Hispanics" and "white guys" to refer to the defendants and witnesses. They also objected to the prosecutor's inference that the defendants were using drugs the night of the crime and the comment that the defendants' rights had been "scrupulously defended." They objected to the prosecutor saying "you need to be awfully drunk not to have a clue about what happened" in explaining the instruction about the defense of intoxication. Finally, they objected to an overhead transparency the prosecutor had mistakenly shown the jury which read: "Innocent people don't lie." Although the objection was

sustained, counsel for Escobedo and Herrarte moved for a mistrial arguing prosecutorial and prejudicial misconduct. The trial judge denied the motion for a mistrial, but when the jury returned from recess he gave the following instruction:

> In the State's argument I have previously mentioned certain matters that you must disregard. The prosecutor, in the Court's opinion, went over the line. And the Court is trying to make sure that those matters that he brought up are not used as a basis of your decision.
>
> The recess lasted a little longer than it would have except the Court needed to take up additional matters that were brought in - brought up in the prosecutor's argument which the Court considers went over the line and has nothing to do with this case.
>
> First he referred to the defendants as Hispanics and to the other people as white guys. During the voir dire of the jury I read an instruction with regard to the ethnicity of the defendants and . . . that matter has no place in this trial. Those comments have no place either and should be disregarded.
>
> Also there was a reference towards drugs. You have heard the evidence, and you can determine what evidence there is as to drugs. You are not to be swayed with regard to your verdicts by comments made by the prosecutor in that vein.
>
> In addition, the prosecutor made the comment that the defendants' attorneys, the defendants were scrupulously defended by their attorneys. The word scrupulously has no place in this trial. You are to disregard any effect of that.
>
> In addition, the prosecutor made the comment if you need to be awfully - "You need to be awfully drunk not to know what - not to have a clue about what happened." There is nothing in the evidence that supports such a comment, and the comment is to be disregarded. And you are not to consider it in your determination in this case.

Finally, at one point the prosecutor left a comment on the projector and it flashed briefly. I don't know whether you saw it or not.

Did you see it? It referred to innocent people. I take it you saw it. You saw it back there. And you saw it.

That comment and it is - since - some of you saw it, I'll tell you what it was so - because this is the most upsetting thing of all is that the comment is "Innocent people don't lie." That comment is improper. You are to completely disregard it. And you are to give no effect to it whatsoever. It's a saying. It has no basis in fact. And it is not part of the evidence, so do not give it any consideration.

Now, you can understand by the tone of my voice that I'm upset that these things occurred. I told you I want a fair trial. I think the prosecutor went over the line. And I tell you that in order that you can disregard those comments and give them no weight whatsoever.

The jury began its deliberations about 3:00 p.m. on day six of the trial. The jury deliberated into the evening and was excused about 10:00 p.m. with instructions to return at 9:00 a.m. the next morning to resume deliberations.

That morning, the county attorney informed the trial judge he recently received information from a person who reported hearing a juror make racial remarks about Escobedo at a bar a few nights earlier. The trial judge conducted an *in camera* inquiry into the report, which included testimony from the juror and the informant. In chambers the judge said, "Perhaps we should dismiss the juror" and Mr. Jones responded, "I will have no problem with that." Court reconvened with the jury and the trial judge dismissed the juror. The judge stated, "I intend to use an alternate Paula Jacobsma." Mr. Pals responded "yes" and Mr. Jones said "mm-hmm." The alternate juror was summoned and replaced the dismissed juror. Deliberations resumed after the trial judge instructed the jury to begin their deliberations anew. The

jury returned its verdict later in the day finding Escobedo guilty of first-degree murder, willful injury, and assault.

## B.    The State Post-conviction Proceedings

Escobedo petitioned for state post-conviction relief asserting ineffective assistance of trial counsel for not seeking a mistrial when a juror was replaced with an alternate juror after the start of deliberations. Escobedo argued that he was prejudiced by this error because a mistrial would have been granted had one been requested.

During the proceedings on his first post-conviction petition, Escobedo testified that he knew about the juror substitution because his lawyer discussed it with him and he was present while the attorneys and judge discussed it. He stated his lawyer did not ask him whether he would agree with replacing a juror or if he instead wanted to request a mistrial. Escobedo testified that he did not ask his attorney any questions about the situation.

Jones testified that he realized that his client, Herrarte, had two options — to move for a mistrial or to continue deliberations. He elaborated:

> My view was that we should continue with this jury and allow the jury to deliberate. That was my view, because I felt that it had been emphasized very strongly to the jury that racial conversations were not to be taken into account. I felt the State, because of [the prosecutor's] actions and the judge's reaction to them, lacked credibility with the jury. I felt that because of those things we had the best opportunity to have a jury that would be favorably inclined to believe that our clients acted in self-defense.
>
> I believed that the decision about whether or not to ask for a mistrial was a tactical decision and was mine alone after consulting with my client.

I did talk with Mr. Herrarte about the possibility of a mistrial and discussed with him the fact that I thought the jury would be fair, and at that time I did make the agreement with [the trial judge] that we would replace the juror.

Pals testified that he evaluated the situation and that he, too, did not believe a mistrial was the best option. He stated:

I felt we had gotten as much as we could get from the State's witnesses during the course of trial to establish our defense. And then with how the events went during final argument, I didn't think those matters would recreate themselves if there was a second trial.

Pals stated he thought substituting the juror so that the deliberations could go forward was the best option. He explained:

The reason for that was you have eliminated the potential bias from [the dismissed juror] from the jury, as best you were able, and gave the jury a chance to go back and start over with deliberations, as I believe Judge Dandos directed them to do, and you still had the impact of what happened during the State's final arguments [weighing] in the defendant's favor, in my estimation.

Pals further testified that he discussed the issue and the options including a mistrial with his client, but ultimately believed the decision as to whether to seek a mistrial was a tactical decision to be made by him and Jones.

The state post-conviction court denied relief, finding that the decision not to request a mistrial was a matter of trial strategy and that Escobedo was not required to waive that right on the record. The post-conviction court also concluded that Escobedo could not show prejudice. On appeal, the Iowa Court of Appeals concurred in the post-conviction court's conclusion that trial counsel's choices were reasonable

strategic and tactical decisions and that Escobedo could not establish prejudice. Escobedo, 2004 WL 2804848, at *2.

## C.    The Federal Habeas Proceedings

On November 10, 2010, Escobedo filed a pro se habeas corpus petition in the district court under 28 U.S.C. § 2254. Thereafter, appointed counsel filed an amended petition alleging trial counsel was ineffective for failing to seek an automatic mistrial when the juror was removed after deliberations had begun. As will be discussed, the district court determined that counsel's performance was constitutionally deficient and that Escobedo was prejudiced thereby.

## II.    Discussion

On appeal from a district court's grant of a habeas petition, we review the district court's findings of fact for clear error, and its conclusions of law *de novo*. Jackson v. Norris, 651 F.3d 923, 925 (8th Cir. 2011). State court findings of fact are presumed correct unless rebutted by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

The statutory standards governing habeas review are set out in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Because Escobedo's claims were "adjudicated on the merits in State court proceedings," he is entitled to relief only if he shows that the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). Escobedo brings his claim under the "unreasonable application" clause.

"[C]learly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta," of the Supreme Court's decisions. White v. Woodall, 134 S.Ct. 1697, 1702 (2014) (internal quotations and citations omitted). "And an 'unreasonable application of' those holdings must be 'objectively unreasonable, not merely wrong; even clear error' will not suffice." Id. (quoting Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003)). "Rather, '[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" Id. (quoting Harrington v. Richter, 131 S.Ct. 770, 786-787 (2011)). "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." Harrington, 131 S.Ct. at 786.

Escobedo claims the state court unreasonably applied clearly established federal law when it held that he had not been denied effective assistance of counsel. The state court reviews a post-conviction relief petition based on ineffective assistance of counsel under Strickland. To obtain relief based on ineffective assistance of trial counsel, Escobedo must establish that counsel's performance was deficient and the deficiency prejudiced the defense. Strickland, 466 U.S. at 687, 692. Deficient performance requires a showing that "counsel's representation fell below an objective standard of reasonableness." Id. at 688. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. at 689. The Court affords counsel "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. Furthermore, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete

investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Id. at 690-91.

To demonstrate prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. "An error by counsel even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Id. at 691.

Federal habeas courts must find a state court's application of Strickland was unreasonable under § 2254(d) to grant habeas relief. As the Supreme Court has explained:

> The pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a Strickland claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different.

Harrington, 131 S.Ct. at 785.

## A.

On the deficient performance prong of Strickland, Escobedo claims, and the district court so held, that counsel's failure to move for a mistrial could not have been a legitimate tactical and strategic choice. This, he explains, is because counsel was unaware that Iowa law prohibited substituting an alternate juror after the start of

-10-

deliberations and that a mistrial would automatically be granted. Counsel's decision not to move for a mistrial, in other words, was not the kind of informed decision made after thorough investigation of the law that would qualify as a strategic choice. Escobedo concludes that the decision not to move for a mistrial, therefore, is entitled to no deference and that counsel's performance was constitutionally deficient as a matter of law.

In reply, the state first maintains that the law was not at all clear that a mistrial would automatically be granted. This Court agrees. The rule in question states "Alternate jurors shall . . . replace any juror who becomes unable to act, or is disqualified, *before* the jury retires, and if not so needed shall then be discharged." Iowa Rule of Criminal Procedure 2.18(15) (emphasis added). To be sure, an inference from the rule is that *after* the jury retires to begin deliberations, no replacement may be made. But a fair reading of the rule also allows for the competing interpretation that the rule is simply silent on the propriety of replacing jurors *after* deliberations had begun. In fact, there was no interpretation of this rule on the books until the Iowa Court of Appeals held in this very case on direct appeal that no replacement was permitted during deliberations. Escobedo, 573 N.W.2d at 276-77. This Court has held that "counsel's performance is not deficient [under Strickland] by failing to predict future developments in the law." Wajda v. United States, 64 F.3d 385, 388 (8th Cir. 1995). Accordingly, counsel, here, was not required to predict how a legal provision, such as Rule 2.18(15), was later interpreted. After all, counsel knew enough at least to consider moving for a mistrial, which he did so before deciding that even though it might be available, the better strategy was to take a chance with what he perceived to be as favorable a jury as could be had in that or any other subsequent trial.

The state then contends that even if it were established there was an automatic right to a mistrial at the time of Escobedo's trial, failure to seek a mistrial still would be a legitimate decision, given counsel's strategic concerns. Certainly there was no

-11-

requirement that a mistrial be requested, only that one should have been granted if requested. As this Court pointed out in a similar case, "We have been asked how we can gauge whether counsel's failure to object was deficient or not if he did not know the law. This is the wrong question . . . . We need only determine whether the law required that an objection . . . be made in this case to prevent trial counsel's representation from falling below an objective standard of reasonableness." Wright v. Nix, 928 F.2d 270, 271 (8th Cir. 1991).

Escobedo's argument, as we understand it, is that counsel should have moved for a mistrial simply because it would have been granted. But that is not the law. It does not take into account whether counsel's decision — whatever his knowledge of the law — fell below an objective standard of reasonableness. That standard, we believe, necessarily requires a consideration of whether a mistrial would have been in Escobedo's best interests, strategically or otherwise. In view, then, of the significant strategic reasons for proceeding with the case, the decision did not fall below an objective standard of reasonableness, regardless of counsel's knowledge of the law. See also, Hammond v. Hall, 586 F.3d 1289, 1328, 1335 (11th Cir. 2009) (state court did not unreasonably apply Strickland when finding no breach of duty from failure to seek mistrial during capital sentencing proceeding, even though state law provided an "automatic" right to a mistrial for prosecutorial misconduct, a right of which counsel was ignorant).

Because counsel's performance was not deficient under Strickland, it necessarily follows that the Iowa Court of Appeals' application of Strickland was not unreasonable under § 2254(d) and Escobedo is not entitled to habeas relief.

**B.**

Having determined that Escobedo's ineffective assistance of counsel claim fails on the performance prong, the inquiry could stop here. In the interest of completeness, however, we will also address the prejudice prong.

Applying the well-established Supreme Court standard for <u>Strickland</u> prejudice — whether "there is a reasonable probability that . . . the result of the proceeding would have been different" absent counsel's deficient performance, 466 U.S. at 694 — the Iowa Court of Appeals held that Escobedo had failed to establish prejudice:

> [W]e further conclude neither Escobedo nor Herrarte can establish prejudice. The evidence against them was strong, including the testimony of various eye witnesses. There is no reasonable likelihood the result of a second trial would have been any different. We reject the contention that Escobedo and Herrarte need only show there was a reasonable probability the mistrial would have been granted, and not that there was a reasonable probability the ultimate verdict would have been different. In <u>Ledezma</u>, our supreme court reasoned that under <u>Strickland</u>, "different result" requires a reasonable probability that a different verdict would have been reached or that the factfinder would have possessed a reasonable doubt.

<u>Escobedo</u>, 2004 WL 2804848, at *2.

The district court rejected this analysis, concluding instead that <u>Strickland</u> prejudice is a "context-specific" determination, and "the Iowa Court of Appeals 'unreasonably refuse[d] to extend th[e] principle [of context-specific determination of 'prejudice'] to a new context where it should apply," quoting <u>Williams v. Taylor</u>, 529 U.S. 362, 407 (2000).

-13-

The Supreme Court, however, has recently expressly rejected the "unreasonable-refusal-to-extend rule" relied on by Escobedo and the district court. In the recent case of White v. Woodall, the Court noted that the unreasonable-refusal-to-extend rule originated in a Fourth Circuit opinion that the Court had discussed at length in Williams v. Taylor, 529 U.S. 362 (2000), but the Court had not taken a position on that issue at the time. 134 S.Ct. at 1706. The Court then declared:

> [T]his Court has never adopted the unreasonable-refusal-to-extend rule on which respondent relies. It has not been so much as endorsed in a majority opinion, let alone relied on as a basis for granting habeas relief. To the extent the unreasonable-refusal-to-extend rule differs from the one embraced in Williams and reiterated many times since, we reject it. Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably *applies* this Court's precedent; it does not require state courts to *extend* that precedent or license federal courts to treat the failure to do so as error. Thus, "if a habeas court must extend a rationale before it can apply to the fact at hand," then by definition the rationale was not "clearly established at the time of the state-court decision." AEDPA's carefully constructed framework "would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law."

Id. (internal citations omitted).

White reiterated the well-established principle that extensions of Supreme Court precedent do not constitute clearly established Federal law for purposes of 28 U.S.C. §2254(d)(1). Without deciding the extent to which the Supreme Court's Strickland prejudice analysis has been "context-specific" in prior cases, we conclude the district court's context-specific analysis was an extension of the Supreme Court's prior prejudice decisions, as the district court acknowledged. See Hammond, 586 F.3d at 1340-41. Accordingly, the Iowa Court of Appeals cannot be said to have unreasonably applied Strickland in concluding that Escobedo failed to establish prejudice and is not entitled to habeas relief.

-14-

## III.  Conclusion

Based on the post-conviction record, the state court decision was neither contrary to nor an unreasonable application of <u>Strickland</u>.  For the foregoing reasons, the judgment of the district court is reversed.  The petition for a writ of habeas corpus is denied.

_____