Cite as 2020 Ark. App. 354

# ARKANSAS COURT OF APPEALS

DIVISION III

**No.** CR-19-877

| | |
|---|---|
| | **OPINION DELIVERED:** AUGUST 26, 2020 |
| RICHARD SHRECK<br><br>APPELLANT | APPEAL FROM THE FAULKNER COUNTY CIRCUIT COURT [NO. 23CR-14-827] |
| V. | HONORABLE CHARLES E. CLAWSON, JR., JUDGE |
| STATE OF ARKANSAS<br><br>APPELLEE | AFFIRMED |

## ROBERT J. GLADWIN, Judge

Appellant Richard Shreck appeals the Faulkner County Circuit Court's second denial of his petition for postconviction relief filed pursuant to Arkansas Rule of Criminal Procedure 37.1 (2019) on remand from this court, *see Shreck v. State*, 2019 Ark. App. 85, 572 S.W.3d 35 (*Shreck III*). Shreck argues that the circuit court erred in finding that his trial counsel provided effective assistance because counsel failed to object to certain evidence of "snuff" sex[1] and bondage sex introduced during the guilt phase of trial and also failed to investigate and present a complete defense regarding Shreck's intent. We affirm.

### I. *Background*

On May 27, 2015, Shreck was convicted by a jury on two counts of conspiracy to commit rape. He was sentenced to the maximum thirty-year sentence on each count, to be

---

[1]In the underlying trial, the State described "snuff" sex to the jury as Shreck "wanting to impale a woman or girl with a large rod that's sharpened on the end."

served consecutively, and the maximum fine of $15,000. Shreck's direct appeal to this court was unsuccessful. *Shreck v. State*, 2016 Ark. App. 374, 499 S.W.3d 677 (*Shreck I*). The Arkansas Supreme Court granted Shreck's petition for review and ultimately affirmed. *See Shreck v. State*, 2017 Ark. 39, 510 S.W.3d 750 (*Shreck II*). The mandate issued on March 7, 2017.

## II. *Petition for Postconviction Relief and Rule 37 Hearing*

Shreck then filed a timely petition for postconviction relief in the Faulkner County Circuit Court, alleging that his trial counsel had been ineffective in a number of respects. Without holding an evidentiary hearing, the circuit court denied Shreck's Rule 37 petition in a three-paragraph letter order on March 26, 2018. On April 4, Shreck filed a motion requesting reconsideration and the entry of adequate findings of fact and conclusions of law. The circuit court denied the motion in a one-sentence order filed April 10. Shreck appealed, and this court reversed and remanded for the circuit court to either make sufficient written findings to support its denial of relief or hold an evidentiary hearing. *See Shreck III*, *supra*.

The circuit court held an evidentiary hearing on June 17, 2019, at which Shreck's trial counsel, Jack Lassiter; Shreck's wife, Kathy; and Shreck testified. Following the hearing, the circuit court again denied Shreck's Rule 37 petition in a letter order filed on August 2, which included the following findings:

> The Court first addresses the allegation raised in the petition regarding the lack of any object[ion] to the testimony of Officer Shannon Cook and the use of the word "snuff" in her testimony. Counsel is correction [sic] in that a motion hearing was held prior to trial wherein it was agreed that there would be no discussion of that issue. During Ms. Cook's testimony[,] the word was mentioned[,] and the petitioner's attorney alleges that failure of trial counsel to object at this point was evidence of his failure to represent Mr. Shreck under the standards required by the case law. The Court has reviewed the testimony regarding the motion as well as the

2

testimony of Officer Cook and finds that the [c]ourts have recognized that making objections to the introduction of evidence is within the scope of trial counsel's discretion. The testimony elicited from Ms. Cook and the context in the transcript is that Mr. Shreck in the course of their Faulkner, Searcy[,] and Van Buren Counties discussions indicated that he would not participate in "snuff" sex. Admittedly[,] there was some rather disturbing testimony offered after that[;] however, the context of the testimony is such that the Court believes that this would be a matter of the trial counsel[']s discretion. Also[,] that testimony was not covered by the pretrial motion. Mr. Lassiter could not offer an answer for his failure to object[,] but this does not affect the Court's conclusion.

[Mr. Shreck] next contends that there was testimony regarding bondage[,] and no objection was made. Such testimony appeared in the transcript on [pages] (356–357) and again at pages (502–503) of the transcript. Further, the Court makes the same determination with regard to the admissibility of that testimony as previously set forth in the testimony regarding "snuff" sex. It was an issue that was before the trial counsel and his judgment on not making an objection will not be a basis for finding that he was ineffective.

The third allegation raised is that trial counsel was ineffective for failing to investigate and present a complete defense. In this regard[,] counsel for Mr. Shreck argues that [there] was in fact a real "Brooke Stumbaugh" and that Mr. Shreck had familiarized himself with her and had determined that she had no small children. This was amplified by the fact that he drove up next to her car at the Walmart parking lot and had time to recognize that there were no children in the vehicle[,] and [he] remained without attempting to drive off. Officer Chad Wooley testified that [Mr.] Shreck was there approximately 10–15 seconds before the officers arrived as [sic] his vehicle. The testimony is clear that while Mr. Shreck remained in that location for 10–15 seconds[,] it was also noted in the testimony that the parties had agreed that nothing illegal would happen that night. It could be as easily assumed that Mr. Shreck[,] recognizing that there were no children in the car[,] determined that this was in furtherance of their agreement not to do anything illegal that night. It is his contention that the existence of "Brooke Stumbaugh" should have been pursued[;] however[,] the testimony is replete with the messages between Officer Cook and Mr. Shreck regarding the use of young children and sexual acts. After the [sic] claims to have made the discovery.

Further, the Court notes that Mr. Shreck and [Officer Cook] had exchanged photographs[,] which [Officer Cook] testified was not a photograph of the Brooke Stumbaugh located by Mr. Shreck. Mr. Shreck testified that he had located a photograph of the woman he believed to be Brooke Stumbaugh. For their communication after that point would certainly be a matter for [t]rial [c]ounsel to weight [sic] in making a determination on what defense to pursue. To now allege that his attorney was ineffective for failing to pursue this does not give rise for a

3

finding by the Court that Mr. Lassiter's representation was below the standard required.

Again, the Court is of the opinion that this was trial strategy which comes under the heading of the trial attorney's discretion.

Shreck filed a timely notice of appeal on August 16, and this appeal followed.

### III. *Standard of Review*

Our supreme court reiterated the standard of review in postconviction-relief cases in

*Johnson v. State*, 2020 Ark. 168, at 4–6, 598 S.W.3d 515, 519–20:

> When reviewing a circuit court's ruling on a petitioner's request for Rule 37.5 relief, this court will not reverse the circuit court's decision granting or denying postconviction relief unless it is clearly erroneous. *Kemp v. State*, 347 Ark. 52, 55, 60 S.W.3d 404, 406 (2001). A finding is clearly erroneous when, although there is evidence to support it, the appellate court after reviewing the entire evidence is left with the definite and firm conviction that a mistake has been made. *Id.*, 60 S.W.3d at 406.

> When considering an appeal from a circuit court's denial of postconviction relief on a claim of ineffective assistance of counsel, the sole question presented is whether, based on a totality of the evidence under the standard set forth by the Supreme Court of the United States in *Strickland v. Washington*, 466 U.S. 668, the circuit court clearly erred in holding that counsel's performance was not ineffective. *Sparkman v. State*, 373 Ark. 45, 281 S.W.3d 277 (2008). In making this determination, we must consider the totality of the evidence. *Howard v. State*, 367 Ark. 18, 238 S.W.3d 24 (2006).

> The benchmark for judging a claim of ineffective assistance of counsel must be "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686. Pursuant to *Strickland*, we assess the effectiveness of counsel under a two-pronged standard. First, a petitioner raising a claim of ineffective assistance must show that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the petitioner by the Sixth Amendment to the United States Constitution. *Williams v. State*, 369 Ark. 104, 251 S.W.3d 290 (2007). A petitioner making an ineffective-assistance-of-counsel claim must show that his counsel's performance fell below an objective standard of reasonableness. *Springs* [*v. State*], 2012 Ark. 87, 387 S.W.3d 143. A court must indulge in a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Id.*, 387 S.W.3d 143.

Second, the petitioner must show that counsel's deficient performance so prejudiced petitioner's defense that he was deprived of a fair trial. *Id.*, 387 S.W.3d 143. The petitioner must show there is a reasonable probability that, but for counsel's errors, the fact-finder would have had a reasonable doubt respecting guilt, i.e., the decision reached would have been different absent the errors. *Howard*, 367 Ark. 18, 238 S.W.3d 24. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *Id.*, 238 S.W.3d 24. Unless a petitioner makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversarial process that renders the result unreliable. *Id.*, 238 S.W.3d 24. "[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697.

## III. *Analysis*

### A. & B. Failures to Object

Shreck asserts in his first two claims for relief, as he did in his petition before the circuit court, that Mr. Lassiter was ineffective for failing to object when testimony and evidence regarding both snuff sex and bondage sex was introduced by the State in the guilt phase of his trial. Regarding the former, prior to trial, the State and Shreck's counsel stipulated on the record that no such testimony or evidence would be introduced by the State during the guilt phase of the trial. In doing so, the State acknowledged that such evidence was highly prejudicial and, if introduced at that stage, would likely amount to a basis for reversal on appeal.

Despite the stipulation, the State introduced testimony from Officer Cook during which she read from the transcript of chats between Shreck and her, part of which Shreck claims included discussions not only about snuff sex in general, but also snuff sex with infants. The chats also included Shreck stating, "When you said your limits were no snuff, I know you had at least thought about it." The discussions indicated that Officer Cook (a.k.a.

5

"Brooke Stumbaugh"—her fictitious identity during this undercover operation) did not want Shreck to engage in snuff sex with her alleged children. Shreck also claims that Officer Cook enticed him to say that "not getting caught" would be a "big motivator" for declining to engage in snuff sex with her children. He notes that these irrelevant and highly prejudicial discussions were all introduced, without objection, as part of State's exhibit 34.[2] Shreck argues that his trial counsel inexplicably allowed this inadmissible testimony and evidence to be presented to the jury without objection despite its lack of probative value and, more importantly, its overwhelming prejudicial effect.

Shreck's trial counsel, Mr. Lassiter, was questioned at the evidentiary hearing, and he acknowledged that testimony and other evidence about snuff sex was not helpful to the defense. After being asked to read the portion of the trial transcript in which snuff sex was testified to by Officer Cook, Mr. Lassiter acknowledged that he "did not object to any of this" and that the testimony in question arose during testimony from the State's very first witness, which placed it in the minds of the jurors at the very outset of the trial. Mr. Lassiter testified that he could not remember why he did not object and could not think of any reason why he did not object to the testimony.

Shreck also argues that Mr. Lassiter was ineffective for failing to object to testimony and evidence presented by the State at trial regarding bondage sex. On direct, Officer Cook testified without objection about chats that she engaged in with Shreck in which Shreck talked about various bondage sexual experiences that he had engaged in with other women.

---

[2]During deliberations, the jury asked for and received a copy of the chatroom transcript in question between Shreck and Officer Cook, including exhibit 34.

This was also part of the chatroom transcript that was introduced into evidence without objection as part of State's exhibit 34.

Additionally, during cross-examination of Shreck, the State again brought up the topic, asking Shreck if he "told [Officer Cook] that there was another woman [he] was meeting up with in Little Rock to do certain [bondage] sexual acts." For the same reasons previously discussed, Shreck argues that this evidence was not relevant to the conspiracy-to-commit-rape charges against him. Also, for the same reasons, he maintains that this evidence from the chatroom transcript regarding bondage sex with other women was unduly prejudicial as its only purpose was to inflame the jury and paint Shreck as a perverted deviant when it came not only to children, but also to other adults.

At the evidentiary hearing, Mr. Lassiter acknowledged that the bondage-sex evidence was not helpful to the defense but stated that he "thought [any objection] would [have been] overruled and would [have been] a waste of time." Shreck notes that Mr. Lassiter agreed that it is "a good idea to make a record."

After reviewing both the record related to the motion in limine and the trial testimony, the circuit court ultimately rejected both of Shreck's failure-to-object claims under the same reasoning, finding that they were matters of "discretion" by trial counsel. The circuit court stated these were issues that were before the trial counsel and that his judgment on not making an objection would not be a basis for finding that he was ineffective. The circuit court also found that the snuff-sex testimony in question was not covered by the pretrial motion.

Shreck argues that there can be no valid "strategic" or "tactical" reason for not objecting to this highly prejudicial and inadmissible testimony and evidence. Shreck further asserts that it was unreasonable for Mr. Lassiter to justify failing to object on the ground that "it would have been overruled." Noting that an important part of effective trial advocacy is, however, making a record for further review, Shreck asserts, without supporting authority, that it is well settled that appellate courts will not address arguments on appeal unless an appropriate objection was made at trial. Shreck urges that such reasoning—even if labeled trial strategy—defies both logic and common sense because in every criminal appeal in which an appellate court reverses, there was an objection made at trial that was overruled.

Because Mr. Lassiter testified that he could not recall why he did not object to the above-referenced evidence, Shreck cites as support for his claim the Eighth Circuit's decision in *Gabaree v. Steele*, 792 F.3d 991 (8th Cir. 2015), in which trial counsel likewise could not remember why she failed to object to certain inadmissible evidence. The Eighth Circuit held that under such circumstances, the court must examine counsel's trial tactics and strategy by reviewing the underlying record because it best reflects counsel's perspective at the time of the trial. The *Gabaree* court stated:

> We are in an awkward posture in this case because counsel was unable to remember her trial strategy or her rationale for any decision made during the trial. Thus, as we have done in this situation in the past, "we will examine counsel's trial tactics and strategy as revealed by the state court record because that record best reflects 'counsel's perspective at the time.'" Though counsel in this case repeated that she had no memory of the case, she gave possible reasons for her decisions regarding the testimony of the two doctors. Thus, as the district court did, we will consider her proposed tactics and strategy, in conjunction with the state court record, so that we may best perceive "counsel's perspective at the time."

*Id.* at 995 (internal citations omitted). In a footnote, the Eighth Circuit also stated: "[I]t is what we can discern from the state court record reasonably could have been counsel's strategy, and the unreasonable nature of that strategy, that convinces us that relief is appropriate." *Id.* at 995 n.5.

Shreck submits that like trial counsel in *Gabaree*, Mr. Lassiter could not remember why he failed to object; however, he also notes a dissimilarity in that here, Mr. Lassiter failed to offer any possible reasons for his failures to object. Mr. Lassiter merely testified that at trial, the case turned on whether the jury believed that Shreck had the actual intent to follow through and act on the communications he engaged in online with Officer Cook. Accordingly, Shreck surmises that Mr. Lassiter's strategy was to convince the jury that these conversations were merely part of a fantasy and that Shreck had no real intent to follow through and actually molest children. Shreck submits that the record below reflects that this was the defense presented at trial.

Shreck claims that the trial record, coupled with Mr. Lassiter's having filed a motion in limine to prevent testimony or evidence about snuff sex in the guilt phase, leads only to the conclusion that there was no reasonable basis for Mr. Lassiter's failure to object to either the snuff- or bondage-sex evidence. Shreck therefore maintains that the first prong of the *Strickland* test is satisfied, yet the circuit court held that the failures to object were matters of "trial counsel's discretion" or "trial strategy" and/or "tactics."

Shreck argues that the circuit court's findings regarding the references to snuff sex and bondage sex during the guilt phase of his trial are clearly erroneous because there is no evidence in the record to support them. He urges that at best, the findings amount to rank

9

speculation, and at worst, they are contradicted by the record. Contrary to the circuit court's findings, Shreck submits that Mr. Lassiter's failures to object to this evidence were not part of his trial strategy; rather, they amounted to professional negligence. Shreck asserts that the failures to object were professionally unreasonable, and that but for that negligence, there is a reasonable probability that the result of his trial would have been different. Accordingly, he maintains that both *Strickland* prongs are satisfied and urges that the circuit court clearly erred in denying relief on his claim.

We initially note that although Shreck claims Mr. Lassiter generally failed to object to snuff-sex evidence offered during the guilt phase of trial, he specifically alleges error only as to testimony occurring at pages 364–66 of the underlying trial transcript. That testimony was offered by Officer Cook regarding the chatroom conversations she had with Shreck. As Shreck acknowledges, Mr. Lassiter successfully moved before trial to have the portions of the chatroom transcripts that referred to snuff sex redacted. The first challenged chats, in the context of the conversation between Officer Cook and Shreck, do not specifically mention snuff sex. The second challenged mention of snuff sex was a statement by Officer Cook that "not getting caught" was the reason she was against snuff sex with her children. Neither of these statements was uttered by Shreck; rather, they were made by Officer Cook. The third challenged statement was made by Shreck, mentioning that it was Officer Cook, not Shreck, who had mentioned snuff sex and "who had thought about snuff sex."

At the hearing on Shreck's Rule 37 petition, Mr. Lassiter candidly stated that he could not "think of any reason right now why I shouldn't have objected to that or maybe I wanted to let it in"—potentially part of a trial strategy to cast doubt as to Shreck's intent

to harm children. Moreover, our review indicates that the challenged references to snuff sex pale in comparison to what Shreck himself stated about snuff sex in the redacted portions. Given the great extent to which Mr. Lassiter successfully kept Shreck's comments about snuff sex from the jury during the guilt phase of trial, we hold that there is no merit to Shreck's argument that the circuit court erred in denying his claim that Mr. Lassiter performed deficiently at trial for failing to object to these few mentions of snuff sex.

Moreover, we hold that Shreck suffered no prejudice because of these references to snuff sex and bondage sex. Shreck's defense was that the conversations he had with Officer Cook about his desire to commit sexual acts with children were "all roleplay or fantasy or 'BS.' " Given the contents of the nonchallenged portions of the chatroom transcripts, it is hardly likely that these inconsequential mentions of snuff sex and bondage sex had any effect on the outcome of trial. The nonredacted portions of the transcript, which the jury had during deliberations, reference in detail Shreck's desire to perform horrific acts on children. Despite Shreck's attempt to downplay it, he undisputedly made arrangements to meet Officer Cook and her alleged minor children at a Walmart parking lot—where he showed up as scheduled with gifts for the children.

In order to carry his burden to demonstrate prejudice, a petitioner must show, when making a claim of ineffective assistance for failing to raise an objection or make an argument, that the objection or argument would have been successful if made. *Hartman v. State*, 2017 Ark. 7, at 6, 508 S.W.3d 28, 33. We hold that Shreck failed to establish in his petition that a motion to exclude the references to snuff sex and bondage sex would have been successful. Specifically, regarding the failure to object to the evidence related to bondage sex under the

11

particular facts of this case, a motion to exclude the references would not have been successful.

Arkansas Rule of Evidence 401 (2019) defines relevant evidence as evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. In contradiction to Shreck's defense at trial that the chatroom conversations he had with Officer Cook about his desire to commit sexual acts with children were "all roleplay or fantasy or 'BS,' " Shreck told Officer Cook that although he was "involved in [bondage] stuff" with a mom he meets sometimes in Little Rock, "if this works out, I will break things off with her. I won't need her anymore." Because Shreck's expressed willingness to end an existing bondage-type sexual relationship with another woman if sex with Officer Cook's alleged underage children came to fruition was relevant to counter his defense at trial that it was all merely a fantasy, we hold that the circuit court did not err in finding that there was no deficient performance under *Strickland*.

Our review of the record supports the circuit court's findings that these brief, unchallenged references regarding snuff sex and bondage sex had no effect on the outcome of the trial, given the contents of the nonchallenged portions of the chatroom transcripts. The jury was aware of the extent of Shreck's deviant sexual desires through agreed-upon, nonredacted portions of the transcript. Given that he spoke openly and in depth about horrible acts against children, the challenged comments can hardly be considered to "undermine confidence in the outcome of [Shreck's] trial." *Strickland*, 466 U.S. at 694.

The circuit court's ruling specifically states that it did review the questionable references in context with the rest of the underlying trial transcript as contemplated by *Gabaree*, *supra*. A court must indulge in a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Id*. Pursuant to *Strickland*, *supra*, we hold that the circuit court did not err in finding that Shreck's counsel's performance on this issue did not fall below an objective standard of reasonableness. *See Springs*, *supra*. Further, considering the totality of the evidence that was properly before the jury, Shreck has failed to show that Mr. Lassiter's performance, even if it could be deemed deficient with respect to this limited testimony, so prejudiced Shreck's defense that he was deprived of a fair trial or that there is a reasonable probability that, but for these failures to object, the outcome of his trial would have been different. *See Reynolds v. State*, 2020 Ark. 174, at 4, 599 S.W.3d 120, 125.

C. Failure to Investigate and Present a Complete Defense

Shreck's final claim is that Mr. Lassiter was ineffective for failing to investigate and present a complete defense on the issue of Shreck's intent to meet with the two alleged children and take them to Hot Springs for the purpose of engaging in sexual acts. Shreck maintains that if the jury had been left with a reasonable doubt about whether the things he said online and the things that he did were done with said intent, he would have been acquitted. He argues that Mr. Lassiter failed to investigate and present testimony and other evidence that would have gone directly to this issue and, more than likely, would have persuaded the jury that Shreck lacked the requisite intent to meet with and abuse real children.

Shreck claims that Mr. Lassiter could—and should—have presented testimony by Shreck and by Officer Cook to confirm that when Shreck drove into the Walmart parking lot and pulled up beside Officer Cook in her vehicle, he could easily see that she had no children in her vehicle—yet he still remained and did not attempt to drive away. Testimony at trial indicated that from the time Shreck parked beside Officer Cook and the two introduced themselves, a period of ten to fifteen seconds passed before other officers converged to arrest him. Shreck argues that his remaining stationary during this period of time demonstrates that, contrary to the State's theory that Shreck's purpose was to meet with the alleged children, his actual purpose was to meet only with Brooke Stumbaugh. He submits that those ten to fifteen seconds would have provided him with more than enough time to process that his alleged deviant sexual desires would not be fulfilled because Officer Cook had no children with her in the vehicle, contradicting the State's theory.

Shreck also argues that Mr. Lassiter should have investigated and presented testimony that would have demonstrated to the jury that during the course of their chats, Shreck had actual knowledge that the woman with whom he was chatting, Officer Cook (as Brooke Stumbaugh), had no minor children. He claims that such evidence would have shown that Officer Cook understood that Shreck knew that Brooke Stumbaugh had no minor children.

Shreck notes that during his chats with Officer Cook, he conducted online research in an attempt to find information on Brooke Stumbaugh. The State asserted that Officer Cook did not know that a real Brooke Stumbaugh existed and simply made up the name for purposes of her dealings with Shreck. But Shreck maintains that because the name is so unusual, this could not have been true. Well before the meeting at Walmart, Shreck googled

14

the name "Brooke Stumbaugh," accessed a Twitter account in that name, and learned that there is a real person with that name who lives in Lonoke County and is a massage therapist. Importantly, he points out that this person indicated in a post that she was thirty-two years old and had a son sixteen years earlier—rather than having two children who are eight and ten years old as presented by Officer Cook in her role as Brooke Stumbaugh.

During Shreck's chats with Officer Cook, he asked questions about whether she was a massage therapist, etc. He suggests that this information would have placed a reasonable investigator on notice that Shreck knew that the woman with whom he was communicating about having sex with her alleged eight- and ten-year-old children did not have children that age. The trial record indicates that Mr. Lassiter began pursuing this line of defense, asking both Shreck and Officer Cook a question or two about the "real" Brooke Stumbaugh; however, Shreck maintains that Mr. Lassiter abandoned that defense and did not pursue it any further.

Shreck maintains that Mr. Lassiter's abandonment of this defense amounted to ineffective assistance; specifically, he argues that Mr. Lassiter could—and should—have (1) cross-examined Officer Cook in much more detail about the real Brooke Stumbaugh, including the questions that Shreck posed to her about whether she was a massage therapist who lived in Cabot; and (2) questioned Shreck in much greater detail about this information, which would have painted a clear picture showing that both Officer Cook and Shreck knew that he was chatting with a woman who had no underage children.

Shreck argues that this testimony would have shown, convincingly, that from the beginning of his communication with Officer Cook his chats were nothing but "fantasy

talk" absent of any intent to follow through with the alleged children. Shreck argues that it was imperative that Mr. Lassiter present all the existing evidence that would have tended to show that Shreck had no intent to actually engage in sexual activities with children. He asserts that Mr. Lassiter's failure to do so amounted to ineffective assistance of counsel and that the resulting prejudice is evident from the outcome of the trial.

At the evidentiary hearing on his Rule 37 petition, Mr. Lassiter was asked about these matters. He acknowledged that "the goal in this case was to present the jury something to illustrate [Shreck's] lack of intent." He testified that he doubted he considered presenting proof that Shreck had ten to fifteen seconds to drive away, but he could not offer any real explanation for failing to do so, even though he agreed that doing so might have helped advance the defense that Shreck lacked intent.

Regarding Shreck's knowledge of the identity of the real "Brooke Stumbaugh," Mr. Lassiter testified that he was aware of this issue prior to trial. The following colloquy occurred during the Rule 37 evidentiary hearing:

| COUNSEL: | If . . . she is an adult who had an older child, she had a child when she was very young and it doesn't show that she had any younger children, wouldn't that help support a theory that he knew or had reason to believe that the person he was communicating with didn't have any young children? |
| --- | --- |
| MR. LASSITER: | I don't know that that's a reasonable belief because she's not necessarily the only Brooke Stumbaugh that could be around. . . . Just from the fact that that there can be more than one Brooke Stumbaugh around in Arkansas. |

Mr. Lassiter noted that after asking Shreck on direct examination whether he believed that Brooke Stumbaugh had any kids, and after Shreck answered no, he failed to ask any follow-up questions. Mr. Lassiter provided no explanation for his failure to ask

16

additional questions that would have assisted the jury in understanding why it was important for them to know that Shreck believed that Brooke Stumbaugh had no children, stating, "I don't know why I didn't go further there and try to present that to the jury." He acknowledged that he "did not put anything out there for the jury to think about as far as lack of intent" but then stated his belief that had he presented that to the jury, "[he] would hear about it in the State's closing argument when they tell the jury [he was] trying to distract them from what really happened."

Shreck submits that this information was essential to the central issue in the case. He urges that such a so-called "strategic" or "tactical" decision by trial counsel can survive a Sixth Amendment challenge only if that decision is reasonable. Shreck argues that Mr. Lassiter's decision not to present this lack-of-intent proof was unreasonable and that failing to do so prejudiced Shreck. Shreck submits that both prongs of the *Strickland* test are satisfied regarding this claim. He states that it was professionally unreasonable for Mr. Lassiter to fail to present evidence that was both available and directly relevant to the central issue of Shreck's intent or lack thereof. Because of the importance of this evidence, Schreck argues that there is a reasonable probability that the jury's verdict would have been different had it been presented.

We disagree and note that our review of the underlying trial record indicates that testimony from Shreck was, in fact, presented to the jury that he had "googled" the name "Brook Stumbaugh" and discovered someone with that name who was thirty-two years old and had a sixteen-year-old son. He further stated that from that information, he concluded that she did not have eight- and ten-year-old children. Shreck further testified that although

Officer Cook explained to him that she was a teacher and keeping a low profile when he questioned her about her identity, he believed he had arranged to meet the Brooke Stumbaugh who did not have small children. However, despite that testimony, as the circuit court specifically noted in its opinion denying Rule 37 relief, Shreck continued to chat with Officer Cook as Brooke Stumbaugh "regarding the use of young children and sexual acts."

Shreck also testified at trial that he believed there were no actual children involved because of the above-referenced Twitter post by the real Brooke Stumbaugh—which was introduced at trial by Mr. Lassiter. At trial, Shreck could not explain why he brought gifts for children that he supposedly believed to be nonexistent except to say:

> She asked me to bring gifts for the kids when I came to Conway. I didn't believe that there were kids. I brought the gifts because she made it apparent in my mind that it is important to her that I follow through with the things that she asked me to do.

Shreck further testified that he had purchased the gifts just hours before arriving at the Walmart parking lot in Conway. In addition to this testimony from Shreck, the testimony about his belief in the existence or nonexistence of "Brooke Stumbaugh" and her alleged children resulted in at least two rounds of cross- and redirect examination. We agree with the State that the verdict indicates that the jury simply rejected Shreck's testimony that when he arrived at Walmart bearing recently purchased gifts for children, he did not believe he was meeting children for deviant sexual purposes.

We hold that the circuit court did not err in finding that any additional self-serving testimony from Shreck would not have changed the outcome of trial. There is no merit to Shreck's assertion that his innocent intent to meet Brooke Stumbaugh and not her children was established because he did not drive off during the "lengthy" ten to fifteen seconds that

18

elapsed as he parked next to Officer Cook's vehicle in the Walmart parking lot and observed no children in the car. The record reflects that no one present at the scene confirmed at trial that the inside of Officer Cook's vehicle was observable by Shreck, and no such supporting testimony was offered at the Rule 37 hearing. Also, Shreck could not explain why he brought gifts for the alleged children if he truly believed that no children would be present at the meeting.

Shreck testified at trial in his own defense, yet he never stated that his alleged innocent intentions were confirmed by the fact that he did not drive away when he did not see children in Officer Cook's vehicle. Shreck's stated intention that he believed he was meeting only Brooke Stumbaugh is contradicted by the chat transcripts in which he told Officer Cook that he "did not need anything with her" because the alleged kids would make him happy. The trial transcript indicates that Shreck was thoroughly cross-examined by the State at trial, and he admitted no less than eight times that he wanted to have sex with underage children. He further acknowledged that at various points in his chatroom conversations with Officer Cook he said that he was "serious about it"; he "*really* want[ed] to do this"; he was "legit and want[ed] to do this"; he was "very real"; and he was "in it for the long term." Shreck's subsequent argument that a ten-to-fifteen second look into Officer Cook's vehicle would have undermined the wealth of evidence that established his desire to sexually abuse young children is insufficient to meet the *Strickland* standard.

We hold that the record conclusively establishes that Shreck has met neither prong of *Strickland* on this issue. As with the previous discussion, our review of the record indicates that the information about which Shreck now complains was, in fact, before the jury and

was likely considered in its determination and was likely considered by the circuit court in its denial of his Rule 37 petition. This point, unlike the previous discussion in which Shreck argues that Mr. Lassiter failed to make pertinent objections to the snuff- and bondage-sex evidence, is merely an expression of his disagreement with how the jury weighed the evidence that was before it. Because that is not a basis for Rule 37 relief, we affirm the circuit court's finding on this issue as well.

Affirmed.

SWITZER and VAUGHT, JJ., agree.

*Craig Lambert*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Pamela Rumpz*, Senior Ass't Att'y Gen., for appellee.